This document was signed electronically on July 20, 2021, which may be different from its entry on the record.

IT IS SO ORDERED.

Dated: July 20, 2021



**ALAN M. KOSCHIK**
**U.S. Bankruptcy Judge**

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| In re | ) | Case No. 20-50569 |
| | ) | |
| MIA SIMMONS, | ) | Chapter 7 |
| | ) | |
| Debtor. | ) | Adversary Proceeding No. 21-05005 |
| | ) | |
| | ) | Judge Alan M. Koschik |
| | ) | |
| JULIE K. ZURN, Trustee, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| RONNIE L. HOLMAN, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM DECISION ON**
**PLAINTIFF'S MOTION TO DEEM FACTS ADMITTED**

Julie K. Zurn, the duly-appointed Chapter 7 trustee (the "Trustee") in the underlying bankruptcy case from which this adversary proceeding arises, has filed a complaint against

defendant Ronnie L. Holman (the "Defendant") for avoidance of certain alleged fraudulent transfers and postpetition transfers, recovery of avoidable transfers, and turnover of property of the estate of Debtor Mia Simmons (the "Debtor").

On May 27, 2021, the Defendant objected via email (Docket No. 17, Exhibit D) (the "Objection") to the Trustee's proposed stipulated facts (Docket No. 17, Exhibit A). On May 28, 2021, the Trustee filed a Motion to Deem Facts Admitted (Docket No. 17) (the "Motion"). The Trustee brings the Motion under Rule 36 of the Federal Rules of Civil Procedure, made applicable in bankruptcy practice by Rule 7036 of the Federal Rules of Bankruptcy Procedure. The Court considered the arguments of Trustee's counsel in support of the Motion, and of the Defendant in opposition, at a pretrial conference conducted on the record on June 2, 2021. The Court then took the Motion under advisement. For the reasons set forth in this Memorandum Decision, the Motion will be granted, in part, and denied, in part.

## JURISDICTION AND VENUE

The court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 1334, 157(a), and Local General Order 2012-7 of the United States District Court for the Northern District of Ohio. Venue is proper pursuant to 28 U.S.C. § 1409(a). Actions to determine, avoid, and recover fraudulent transfers and postpetition transfers are core proceedings under 28 U.S.C. § 157(b)(1), (b)(2)(H) and (O).

## PROCEDURAL BACKGROUND

The question for the Court is what alleged facts should be deemed admitted. On March 11, 2020, the Debtor filed a voluntary petition under chapter 7 of the Bankruptcy Code, 11 U.S.C. §101 *et. seq.* The Trustee was appointed on March 18, 2020. On January 25, 2021, the Trustee filed an adversary complaint (Docket No. 1) (the "Complaint") against the Defendant

for avoidance of fraudulent transfers, avoidance of post-petition transfers, recovery of avoidable transfers, and turnover of property of the estate. On March 18, 2021, the Defendant, *pro se*, filed his Answer with the Court. (Docket No. 13.)

On April 16, 2021, the Trustee served the Defendant with requests for admission (Docket No. 17, Ex. B) (the "Requests"). Defendant tardily responded to the Requests for Admission via email on May 27, 2021. The Objection read:

> [T]hank you for sending this. However, this is inaccurate. I was not the sole proprietor of P.U.R.E. Production, Inc. You cannot be a sole proprietor of a 501c3, I am certain you know that. I am the Executive Director and if you look at the Executive Board, you will see Mia Simmons [*sic*] name on that board. Next, you said I use P.U.R.E. Productions as my alter ego. That is not true. I use P.U.R.E. Productions as a company as it is so. A company for film and theatrical production. P.U.R.E. Productions is a company that had a debt, not Ronnie Holman. Mia S[i]mmons is a member of P.U.R.E. Productions, which has nothing to do with this case. Money that was transferred to pay St. Ignatius was monies from ticket sales and merchandise sales from a theatrical show. St. Ignatius was a P.U.R.E. Production debt. Ken Barnnett was a contractor for P.U.R.E. Productions and was also paid from ticket and merchandise sales from a production.
>
> Once again, I am a full-time student and any monies that were given to me from Mia Simmons was MY money. As I explained before, I always gave Mia Simmons cash to hold and save for me because I did not want our money to get mixed into the shared account. She transferred me money from the account that was mine because we could not get to each other in person for me to pay for one thing or the other.
>
> I apologize that you do not believe that, but that is the truth and I can not tell you anything different that is not truthful. I am rather confused on how do you not see these things if you have access to certain things. You should be able to see those things. I do not understand why you all are trying to make P.U.R.E. Productions not be a legitimate business that was a limited liability company and now is an incorporated company.

(Docket No. 17, Ex. D.) Following the Defendant's Objection, the Trustee filed the Motion.

The Court scheduled and held a hearing on the Motion during a pretrial conference on June 2, 2021. The Defendant appeared in person via telephone. The Trustee appeared telephonically through counsel. At the conclusion of the hearing, the Court took the Motion under advisement.

## LEGAL STANDARD

The Trustee brought the Motion pursuant to the Federal Rules of Civil Procedure 36(a)(3), which states:

> *Time to Respond; Effect of Not Responding.* A matter is admitted unless, within 30 days after being served, the party to whom the request is directed serves on the requesting party a written answer or objection addressed to the matter and signed by the party or its attorney. A shorter or longer time for responding may be stipulated to under Rule 29 or be ordered by the court.

Fed. R. Civ. P. 36(a)(3); *see also* Fed. R. Bankr. P. 7036. The Court determines the sufficiency of Defendant's answers to requests for admission pursuant to Fed. R. Civ. P. 36(a)(6), which states:

> *Motion Regarding the Sufficiency of an Answer or Objection.* The requesting party may move to determine the sufficiency of an answer or objection. Unless the court finds an objection justified, it must order that an answer be served. On finding that an answer does not comply with this rule, the court may order either that the matter is admitted or that an amended answer be served. The court may defer its final decision until a pretrial conference or a specified time before trial.

Fed. R. Civ. P. 36(a)(6). Harmonizing the relief sought by the motion with the language of Rule 36, the Court reads the Motion as one brought under Rule 36(a)(6) to determine the sufficiency of the Defendant's answers to the Requests. Rule 36(a)(6) affords the Court the discretion to "order either that the matter is admitted or that an amended answer be served." *Id.* The Motion specifically requests that this Court order the former with respect to each Request.

4

A district court is permitted to "in its discretion, order admitted matters which an answering party has failed to admit or deny, where the information known or readily obtainable after reasonable inquiry was sufficient to enable the answering party to admit or deny." *Asea Inc. v. Southern Pacific Transp.,* 669 F.2d 1242, 1245 (9th Cir. 1981); *accord United States v. Netzer,* No. 1:16-cv-01278-SAB, 2017 U.S. Dist. LEXIS 22446, at *7 (E.D. Cal. Feb. 16, 2017); *see also Hebert v. Litig. Document Grp., Inc.,* No. 2:17-cv-01536-KJD-CWH, 2019 WL 356800, at *3 (D. Nev. Jan. 29, 2019). Additionally, the trial court's function when overseeing a request for admission under Fed. R. Civ. P. 36 is, "to interpret and determine the legal effect and sufficiency of given responses." *Dulansky v. Iowa-Illinois Gas & Electric Co.*, 92 F. Supp. 118, 124 (S.D. Iowa 1950); *accord Sampayo Climaco Y Asociados Despacho Juridico Internacional v. Cantu (In re Cantu)*, No. 08-07041, 2009 WL 1257151, at *1 (Bankr. S.D. Tex. May 4, 2009); *Theriot v. Parish of Jefferson*, No. 95-2453, 1997 WL 102489, at *1 (E.D. La. Mar. 6, 1997).

The standard for determining the sufficiency of a respondent's answers is determined by Rule 36(a)(4), which provides:

> If a matter is not admitted, the answer must specifically deny it or state in detail why the answering party cannot truthfully admit or deny it. A denial must fairly respond to the substance of the matter; and when good faith requires that a party qualify an answer or deny only a part of a matter, the answer must specify the part admitted and qualify or deny the rest.

Fed. R. Civ. P. 36(a)(4); *see also* 8B Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, *Federal Practice and Procedure* §2263 (3d ed. 2010). In this case, the Defendant, a *pro se* individual, did not itemize his answers and associate them with particular Requests. Therefore, in determining the sufficiency of the Defendant's answers, the Court must determine whether he has fairly responded to the substance of a particular matter, in whole or in part.

5

## LEGAL ANALYSIS

The Court finds that the Requests are admitted, denied, or denied in part as follows. Where the Court finds a Request admitted, it has concluded that the Defendant's Objection either did not address the subject matter at all, and therefore is admitted pursuant to Rule 36(a)(3), or did not "specifically deny" or did not deny so as to "fairly respond to the substance of the matter," as required by Rule 36(a)(4). In each instance in which a denial is insufficient pursuant to Rule 36(a)(4), the Court sees no benefit that would outweigh the further cost and delay of ordering the Defendant to serve amended answers, and therefore concludes that the matters are deemed admitted, in whole or in part as further set forth below, pursuant to Rule 36(a)(6) and as requested by the Motion.

Based on the Court's review of the Motion, Requests, and the Objection, the Court concludes that the Requests are deemed admitted, admitted in part and denied in part, or denied, as follows:[1]

1. Ronnie L. Holman and Simmons were involved in a long-term romantic relationship that, upon information and belief, began in 2009 and lasted through the beginning of 2020.

    *DEEMED ADMITTED.*

2. Ronnie L. Holman and Mia Simmons were not married prior to March 20, 2020.

    *DEEMED ADMITTED.*

---

[1] The following are the admissions or denials deemed to have been made by Defendant Ronnie L. Holman in response to the Plaintiff Trustee's Requests for Admission, as determined by the Court in response to the Motion. While matters deemed admitted herein may be used in support of motions or trial arguments seeking factual findings, these are not factual findings pursuant to Rule 52 of the Federal Rules of Civil Procedure solely on the basis of the Court's order on the instant Motion. Defendant Holman's denials noted herein constitute nothing more than his refusal to admit certain allegations made by Plaintiff Trustee.

3. While Ronnie L. Holman was in a relationship with Mia Simmons and until July 20, 2020, Ronnie L. Holman was married to an individual other than Mia Simmons.

   *DEEMED ADMITTED.*

4. Ronnie L. Holman has personal knowledge of Mia Simmons' financial affairs.

   *DEEMED ADMITTED.*

5. From 2018 through March 2020, Mia Simmons was not paying her debts as the came due.

   *DEEMED ADMITTED.*

6. From 2018 through March 2020, Mia Simmons had incurred debts and liabilities that exceed the fair value of her assets.

   *DEEMED ADMITTED.*

7. During Ronnie L. Holman's relationship with Mia Simmons, Ronnie L. Holman and Mia Simmons were the owners of a joint bank account at Chase Bank, account ending 5930 (the "Chase Account").

   *DEEMED ADMITTED.*

8. From March 2019 through March 2020, Mia Simmons's income was the sole source of all deposits into the Chase Account.

   *DENIED. Holman claims at least a portion of the money deposited in the Chase Account as his own.*

9. From March 2019 through March 2020, Mia Simmons deposited her wages from employment in an excess of $24,000 into the Chase Account.

   *DEEMED ADMITTED.*

10. From August 2010 through December 6, 2019, Mia Simmons owned the real property at 22094 Marberry Commons, Bedford Heights, Ohio 44146 (PPN 791-18-027) (the "Property") in her name.

    *DEEMED ADMITTED.*

11. At some time between December 2019 and March 2020, Mia Simmons deposited proceeds in an amount not less than $37,220.96 from the Property's sale into the Chase Account.

    *DEEMED ADMITTED.*

12. Mia Simmons owned a retirement account.

    *DEEMED ADMITTED.*

13. From March 2019 through March 2020, Mia Simmons deposited distributions in an amount not less than $22,883.00 from her retirement accounts into the Chase Account.

    *DEEMED ADMITTED.*

14. From February 1, 2019 to March 20, 2020, Mia Simmons had at least three other bank accounts, one at Bank of America ending in 1146, on at US Bank ending 6297, and an additional account at Chase ending 7259, all of which were owned solely by Mia Simmons.

    *DEEMED ADMITTED.*

15. From February 1, 2019 to March 20, 2020, Mia Simmons' income is the source of the deposits into the Bank of America account ending 1146, the U.S. Bank account ending 6297, and the additional Chase account ending 7259.

    *DEEMED ADMITTED.*

16. Ronnie L. Holman had access to the ATM/Debit Card for the Chase Account.

    *DEEMED ADMITTED.*

17. Ronnie L. Holman used the ATM/Debit Card for the Chase Account to make purchases for Ronnie L. Holman or for Ronnie L. Holman's benefit.

    *DEEMED ADMITTED.*

18. Ronnie L. Holman has an account with, or otherwise used or uses, the "Cash App," a peer-to-peer money transfer service and financial platform offered by Square, Inc. that allows a user (like Ronnie L. Holman) to set up an account to receive money from, or send money to, another user.

    *DEEMED ADMITTED.*

19. From February 1, 2019 through March 11, 2020 Ronnie L. Holman received transfers into or through the CashApp and other individual depository accounts in Ronnie L. Holman's name from Mia Simmons' bank accounts, including but not limited to the Chase Account. The total amount of transfers was $12,416.50.

    *DEEMED ADMITTED.*

20. This Request identifies numerous transfers from various accounts, showing the date, the amount of the transfer, and the account from which each transfer was made and asks Holman to admit that this list is accurate. *See* Docket No. 17, Exhibit B ¶20.

    *DEEMED ADMITTED.*

21. Ronnie L. Holman [*sic*] did not receive anything of value in exchange for the purchases Ronnie L. Holman made on the Chase Account.

    *DENIED. The request for admission appears to be intended to show that the Debtor, not the Defendant, did not receive value in exchange for purchases*

> benefiting the Defendant that were made with funds from the Debtor's Chase
> Account. Holman denies this, contending that any cash from that account used
> for his benefit was, in fact, his cash and that with those transfers the Debtor
> satisfied her own obligation to repay Holman.

22. Ronnie L. Holman did not receive anything of value in exchange for the transfers from these accounts.

    > *DENIED. See Request No. 21.*

23. Ronnie L. Holman owed a debt to St. Ignatius in an amount no less than $2,492.

    > *DEEMED ADMITTED IN PART AND DENIED IN PART. Holman is deemed to have admitted that a debt of no less than $2,492 was owed to St. Ignatius. Homan denies that he owed this debt to St. Ignatius and instead contended that P.U.R.E. Productions owed this debt.*

24. Ronnie L. Holman's debt obligation to St. Ignatius was reduced by $2,492 in December 2019.

    > *DEEMED ADMITTED IN PART AND DENIED IN PART. Holman is deemed to have admitted that a debt to St. Ignatius was reduced by $2,492 in December 2019. Holman denies that he owed this debt to St. Ignatius and instead states that P.U.R.E. Productions owed this debt.*

25. On December 5, 2019, Mia Simmons transferred $2,492 to St. Ignatius from her Bank of America account ending 1146 to pay an obligation by Ronnie L. Holman.

    > *DEEMED ADMITTED IN PART AND DENIED IN PART. Holman is deemed to have admitted that Mia Simmons transferred $2,492 to St. Ignatius from her Bank of America account ending in 1146. Holman denies that Mia Simmons made this*

*payment on account of Holman's obligation and instead contends that Mia Simmons transferred cash owned by P.U.R.E. Productions to satisfy a debt owed by P.U.R.E. Productions.*

26. Simmons did not receive anything of value in exchange for transferring the $2,492 to St. Ignatius.

    *DENIED. Holman denies this, contending that this transfer concerned cash collected for the benefit of, and owned by, P.U.R.E. Productions and that the transfer, which satisfied P.U.R.E. Productions debt to St. Ignatius, satisfied the Debtor's obligation to repay P.U.R.E. Production.*

27. Ronnie L. Holman owed a debt to an individual named Ken Barrett in an amount no less than $2,800.

    *DEEMED ADMITTED IN PART AND DENIED IN PART. Holman is deemed to have admitted that a debt of no less than $2,800 was owed to Ken Barnett. Holman denies that he owed this debt to Ken Barnett and instead states that P.U.R.E. Productions owed this debt to Ken Barnett.*

28. Ronnie L. Holman's debt obligation to Ken Barrett [*sic*] was reduced by $2,800 in October 2019.

    *DEEMED ADMITTED IN PART AND DENIED IN PART. Holman is deemed to have admitted that a debt obligation to Ken Barnett was reduced by $2,800 in October 2019. Holman denies that he owed the debt and instead states that P.U.R.E. Productions owed the debt to Ken Barnett.*

29. On October 24, 2019, Mia Simmons transferred $2,800 to Ken Barnett from her Chase Account to pay an obligation owed by Ronnie L. Holman.

   *DEEMED ADMITTED IN PART AND DENIED IN PART. Holman is deemed to have admitted that Mia Simmons transferred $2,800 to Ken Barnett from her Chase Account. Holman denies that Mia Simmons made this payment for his obligation and instead believed that P.U.R.E. Productions owed the obligation to Ken Barnett.*

30. Mia Simmons did not receive anything of value in exchange for transferring the $2,800 to Ken Barnett.

   *DENIED. See Request No. 26.*

31. In September 2019, Mia Simmons entered into an arrangement with Sharron Williams for debt management services for which Mia Simmons paid a total of $20,000 to Sharron Williams from her Chase Account under this agreement (the "Debt Settlement Money").

   *DEEMED ADMITTED.*

32. The Debt Settlement Money was paid in three equal payments of $2,000 each from Mia Simmons' Chase Account in late October 2019 by direct transfer from the Chase Account to Sharron Williams and one payment of $14,000 from her Chase Account on December 6, 2019 form a cashier's check drawn on her Chase Account.

   *DEEMED ADMITTED.*

33. Ronnie L. Holman owed a debt to Portfolio Recovery in an amount no less than $315.27.

   *DEEMED ADMITTED IN PART AND DENIED IN PART. Holman is deemed to have admitted that a debt of no less than $315.27 was owed to Portfolio Recovery. Holman denies that he owed this debt to Portfolio Recovery and instead states*

that P.U.R.E. Productions owed this debt to Portfolio Recovery.

34. In March 2020, Sharron Williams paid $315.27 of the Debt Settlement Money to Portfolio Recovery for credit card debt owed by Ronnie L. Holman.

> *DEEMED ADMITTED IN PART AND DENIED IN PART. Holman is deemed to have admitted that Sharron Williams paid $315.27 of the Debt Settlement Money to Portfolio Recovery in March 2020. Holman denies that this payment was made on his behalf, instead he states that the payment was on behalf of credit card debt owed by P.U.R.E. Productions.*

35. Ronnie L. Holman owed a debt to Cleveland State University in an amount no less than $1,754.16.

> *DEEMED ADMITTED IN PART AND DENIED IN PART. Holman is deemed to have admitted that a debt of no less than $1,754.16 was owed to Cleveland State University. Holman denies that he owed this debt to Cleveland State University and instead states that P.U.R.E. Productions owed this debt to Cleveland State University.*

36. On June 12, 2020, Sharron Williams paid $1,754.16 of the Debt Settlement Money to Cleveland State University on account of past-due obligations owed by Ronnie L. Holman.

> *DEEMED ADMITTED IN PART AND DENIED IN PART. Holman is deemed to have admitted that Sharron Williams paid $1,754.16 of the Debt Settlement Money to Cleveland State University on June 12, 2020. Holman denies that this payment was made on his behalf and instead states that payment was for the past-due obligations of P.U.R.E. Productions.*

37. On July 17, 2020, Sharron Williams transferred $600 of the Debt Settlement Money to Ronnie L. Holman.

   *DEEMED ADMITTED.*

38. Ronnie L. Holman owed various medical debts in an amount no less than $1,252.00.

   *DEEMED ADMITTED.*[2]

39. In August 2020, Sharron William paid $1,252.00 of the Debt Settlement Money to Revenue Group for medical debt owed by Ronnie L. Holman.

   *DEEMED ADMITTED.*[3]

40. Sharron Williams charged $850 for her services.

   *DEEMED ADMITTED.*

41. Mia Simmons did not receive anything of value in exchange for the payment of Ronnie L. Holman's debts using the Debt Settlement Money.

   *DENIED. Holman denies that all of the debts Mia Simmons paid were his personal debts and instead states that P.U.R.E. Productions owed many of these debts. Holman further contends that the payment of these debts satisfied Debtor's obligation to repay both him and P.U.R.E. Productions on account of their funds deposited in her accounts for safe keeping.*

---

2 The medical debts appear to be different from the other debts paid because it is unlikely that a business entity would incur medical debt. Thus, the Court finds that Ronnie L. Holman admits requests 38-39 regarding the alleged medical debt.

3 *Id.*

14

42. The bankruptcy court did not authorize the transfers in the amount of $4,771.43 after March 20, 2020.

   *DEEMED ADMITTED.*

43. Ronnie L. Holman is the sole member of P.U.R.E. Productions LLC, and Ohio for-profit limited liability company (entity #2292201).

   *DENIED. Holman contends that P.U.R.E. Productions LLC (entity #2292201) previously was a limited liability company and is now a corporation. Ronnie L. Holman was not the sole member of P.U.R.E. Productions LLC. Ronnie L. Holman is the Executive Director and Mia Simmons is a member of the Board of Directors of P.U.R.E. Productions.*

44. Ronnie L. Holman treats P.U.R.E. Productions LLC as Ronnie L. Holman's personal alter ego.

   *DENIED. Holman states that P.U.R.E. Productions is a "legitimate" company and is not his legal alter ego.*

45. Ronnie L. Holman is the sole shareholder of P.U.R.E. Productions, and Ohio not-for-profit corporation (entity #2434442).

   *DEEMED ADMITTED IN PART AND DENIED IN PART. Holman is deemed to have admitted that P.U.R.E. Productions (entity #2434442) is an Ohio not-for-profit corporation. Holman denies that he is the sole shareholder of P.U.R.E. Productions. Holman states that he is the Executive Director of P.U.R.E. Productions and he states that one cannot be a sole proprietor of a 501(c)(3).*

46. Ronnie L. Holman treats P.U.R.E. Productions as Ronnie L. Holman's personal alter ego.

   *DENIED. Holman states that he does not treat P.U.R.E. Productions as his*

*personal alter ego. Holman states that P.U.R.E. Productions is a "legitimate" company and is not his legal alter ego.*

47. Mia Simmons' property was transferred to Ronnie L. Holman through the deposit of her income, including without limitation, her wages, proceeds from the sale of her real estate, and distributions from her retirement accounts, into the Chase account.

    *DENIED.*

48. Mia Simmons' property was transferred to or for the benefit of Ronnie L. Holman in the form of purchases, Cash Payments, and Debt Payments, the latter of which is a defined term that encompasses (a) the $2,492 payment to St. Ignatius on December 5, 2109 from Simmons' Bank of America account ending 1146 and (b) the $2,800 payment to Ken Barnett on October 24, 2019 form Mia Simmons' Chase account.

    *DEEMED ADMITTED IN PART AND DENIED IN PART. Holman is deemed to have admitted that property was transferred in the form of purchases, Cash Payments and Debt Payments. He also admits that Debt Payments encompasses (a) the $2,492 payment to St. Ignatius on December 5, 2109 from Simmons' Bank of America account ending 1146 and (b) the $2,800 payment to Ken Barnett on October 24, 2019 from Mia Simmons' Chase account. Holman denies that the property transferred belonged to Mia Simmons. Holman also denies that all of the Debt Payment were made for his benefit.*

49. Mia Simmons received less than reasonably equivalent value in exchange for the deposits, purchases, Cash Payments, and Debt Payments.

    *DENIED. See Request Nos. 21, 26, and 41.*

16

21-05005-amk    Doc 19    FILED 07/20/21    ENTERED 07/20/21 13:50:36    Page 16 of 17

50. Mia Simmons was insolvent at the time the transfers were made or became insolvent as a result of the transfers.

   *DEEMED ADMITTED.*

51. Ronnie L. Holman received a copy of the complaint that was filed against Ronnie L. Holman by Julie K. Zurn in the Bankruptcy Court for the Northern District of Ohio, Case No. 21-05005.

   *DEEMED ADMITTED.*

52. Ronnie L. Holman participated in the pretrial that was held in this matter with Judge Alan M. Koschik on March 3, 2021.

   *DEEMED ADMITTED.*

## CONCLUSION

The Court will enter a separate form of order granting, in part, and denying, in part, the Trustee's Motion to Deem Facts Admitted consistent with this Memorandum Decision. The Court's Order resolving the Motion to Deem Facts Admitted will not be deemed entered until the separate form of Order has been docketed by the Clerk.

# # #